IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOSHUA ALLEN STRICKLIN                                                          PLAINTIFF

v.                                    4:16CV00673-JTK

ROPER, et al.                                                                  DEFENDANTS

**MEMORANDUM AND ORDER**

**I.    Introduction**

Plaintiff Joshua Stricklin filed this pro se action pursuant to 42 U.S.C. § 1983, alleging cruel and unusual punishment while incarcerated at the Faulkner County Detention Center (Jail) (Doc. No. 2).[1]  Plaintiff asks for monetary and injunctive relief.

Pending before the Court is the Motion for Summary Judgment, Brief in Support, and Statement of Facts filed by Defendants Roper and Glover (Doc. Nos. 14-16).  Plaintiff filed a Response, Brief, and Affidavit (Doc. Nos. 17-19).

**II.   Complaint**

Plaintiff alleged that on July 29, 2016, Defendants forced him and other inmates to lie face down in urine water after one of the inmates flooded their cell. (Doc. No. 2, p. 5)  He also alleged that Roper threatened to taze them if they did not lie down in the water. (Id.)

**III.  Summary Judgment**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

---

[1] Mail sent to Plaintiff at the Jail was returned undeliverable on May 23, 2017 (Doc. No. 20).

1

of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

  **A.**  **Official Capacity**

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities should be dismissed, because he did not allege that their actions were taken pursuant to an unconstitutional policy, practice, or custom, or any widespread pattern of unconstitutional conduct.  A suit against a county official in his official capacity is the equivalent of a suit against the county itself.  Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998).  In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions.  Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990).  Absent such an allegation, the Court finds the monetary claims against Defendants in their official capacities should be dismissed.

  **B.**  **Individual Capacity**

Defendants also ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

According to Defendant Glover's affidavit and incident report, on July 31, 2016, he was informed that inmates in the holding cells were repeatedly flushing the toilets. (Doc. No. 16-1,

---

[2] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

p. 3) Glover went to the cells and found about an inch of water on the ground and paper plugging the holes of the floor drain. (Id.) The toilet in the cells was clogged with numerous items, such as a paper bag, toilet paper, and laundry bag, which he removed. (Id.) He used a plunger to unstop the toilets and provided a mop for clean up, but the inmates in one of the cells refused to clean up the water. (Id.) When Glover gave Plaintiff Stricklin the mop, he threw it, stating, "f___ you I aint cleaning this aint my job." (Id.)  While other inmates cleaned up the water, Stricklin stood up and then fell to the floor screaming that he hurt his leg and head. (Id.) Officers took him to medical, where he was cleared by a nurse. (Id.) Glover stated that there did not appear to be any urine or feces in the toilet water, which flooded Plaintiff's cell, as generally inmates, flush those materials down the toilet before trying to flood the cells. (Id., p. 1). In addition, Plaintiff appeared to fall intentionally in his cell. (Id.)  Glover stated that Defendant Roper was not present at the incident. (Id.)

Defendant Roper stated in an affidavit that he was transferred to the patrol division prior to July 31, 2016, and was not present or involved in the incident. (Doc. No. 16-2)  In addition, the incident occurred on a Sunday and he never worked at the Jail on Sundays. (Id.)  Roper also stated that if he had been there he would have written an incident report. (Id.)

Based on these statements, Defendants state Plaintiff cannot show that Defendants denied him the minimal civilized measure of life's necessities or that they were deliberately indifferent to an excessive risk to his health or safety.  In addition, Defendants state that Plaintiff's allegations do not establish a violation of a clearly established right, as the court in Smith v. Copeland held that an inmate's allegations that he was subjected to an overflowed toilet in his cell for four days did not "rise to the level of constitutional significance." 87 F.3d 265, 268 (8th Cir. 1996).

In response, Plaintiff states that Defendants entered his cell on September 9, 2016 (contrary to the July 29, 2016 date in his Complaint), and threatened to use force against him if he did not lay face down in urine-contaminated water. (Doc. No. 17)

Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." Owens v. Scott County Jail, 328 F.3d 1026 (8th Cir. 2003) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities," may be considered cruel and unusual, and therefore, unconstitutional.   See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In determining when pretrial detention is considered unconstitutionally punitive, the courts apply the Eighth Amendment deliberate indifference standard, focusing on the length of exposure to unsanitary conditions and the degree to which the conditions are unsanitary. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994).   "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Id., (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

"Although the Eighth Amendment's prohibition of cruel and unusual punishment bars more than physical torture, 'discomfort compelled by conditions of confinement, without more, does not

5

violate the amendment.'" Martin v. Byrd, No. 4:07cv01184SWW, 2008 WL 686936 * 4 (E.D.Ark.2008) (quoting Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (other citations omitted.))  "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Martin, supra *4 (quoting Whitnack, 16 F.3d at 957.

As noted by Defendants, an inmate who alleged that he was subjected to raw sewage from an overflowed toilet in his cell for four days, did not state a constitutional claim for relief. Smith, 87 F.3d at 268. The Court found that the allegation amounted to a de minimus imposition and did not implicate constitutional concern. Id. And, an inmate who was provided one roll of toilet paper per week did not state a constitutional claim for relief in Stickley v. Byrd, 703 F.3d 421, 423-24 (8th Cir. 2013).  The Court found that the defendants' refusal to grant the inmate's request for additional toilet paper did not violate a clearly established right, and that "not every deprivation … rises to the level of punishment under the due process clause." Id. at 424 (quoting Green v. Baron, 879 F.2d 305, 310 (8th Cir. 1989)). Finally, a pretrial detainee who slept two nights on the floor next to the toilet, where he was sprinkled with urine, did not state a constitutional claim for relief, in Goldman v. Forbus, 17 Fed. App. 487, 488 (8th Cir. 2001) (unpublished per curiam).

Even accepting Plaintiff's allegations as true (and not condoning such actions), the Court finds that placement of plaintiff face down in his cell in the toilet water did not violate a clearly established right. Plaintiff never stated how long he was required to lay on the floor and he does not deny Defendant Glover's statements that he was given the opportunity to clean up the water. He does not claim that he was exposed to disease or harm or that he suffered any other consequences from the incident. Therefore, based on the case law cited above, the Court finds that

Defendants did not violate a clearly established right and that they are entitled to qualified immunity.

**IV.     Conclusion**

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 14) is GRANTED, and Plaintiff's Complaint is DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 24th day of May, 2017.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE